LINK: 42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None | | None |

**Proceedings:**     (In Chambers)

### ORDER RE: MOTION FOR PRELIMINARY INJUNCTION

### I.
### INTRODUCTION

   In this case, Plaintiff Bretta Santini Pollara ("Santini") sought a judicial declaration that she is not bound by a non-compete agreement signed between her husband, Paul Pollara, and her former employer, Defendant Radiant Logistics, Inc. ("Radiant"). (Docket No. 2 [Faustman Decl.], Ex. 1 [Compl.].) Radiant counterclaimed against Plaintiff for common law misappropriation of trade secrets; unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 et seq., and breach of her duty of loyalty under Cal. Lab. Code section 2860. (Docket No. 8 [Countercl.].)

   On July 2, 2012, Radiant moved to enjoin Counterdefendants from contacting and doing business with Radiant's customers for a period of three years and from altering or destroying evidence relating to their activities with Radiant's customers. (Docket No. 42., [Mot. for Preliminary Injunction ("MPI")]) This motion is currently pending before the Court. Counterdefendants opposed this motion, in part on the basis that the claim for misappropriation of trade secrets is preempted by the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code section 3426. (Docket No. 48 [Oceanair Opp. to Mot. for Prelim. Injunction] at 5–8.) On July 18, 2012, Radiant filed a motion for leave to file a counterclaim to allege a misappropriation claim under CUTSA and add defendants to certain claims. (Docket No. 60 [Radiant Mot. to File Counterclaim] at 10.) The Court granted Radiant's motion on 8/20/12. (Docket No. 74.) The first amended counterclaim ("FACC") was filed on 8/22/12. (Docket No. 76, FACC.) The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

Court then received supplemental briefing from the parties in which, for the first time, the issue of standing was raised. (Docket No. 79, [Opp. Supplemental 1]; Docket No. 85, [Opp. Supplemental 2]; Docket no. 78, [Reply Supplemental 1]; Docket No. 84, [Reply Supplemental 2].)

In the supplemental briefs, Pollara contends that Radiant, as the parent of DBA Distribution Services, which owns the trade secrets in issue, lacks standing to bring suit (and more particularly to seek a preliminary injunction) for Pollara's alleged misappropriation of those trade secrets. Radiant responded that Pollara could not pursue that argument because she initiated the present legal proceedings. Because standing presents a threshold question, the Court addresses that issue first. For the reasons given below, the Court finds that Radiant has not established standing to bring a claim for misappropriation of trade secrets. Accordingly, the Court **DENIES** Radiant's motion for preliminary injunction because it cannot show a likelihood of success on the merits.

## II.
## BACKGROUND

**A. THE MERGER**

In 2008[1] Paul Pollara sold stock owned in DBA Distribution Services ("DBA"), a New Jersey corporation, which he had founded and where both he and Plaintiff were employed, to EBCP 1, LLC ("EBCP"), a Delaware corporation. (Compl. ¶ 5.) In connection with this sale of shares, Paul Pollara signed a "Non-Competition, Non-Solicitation, No Hire Agreement . . . ." (Id. ¶ 6.)

On March 29, 2011, Radiant entered into an agreement with EBCP, DBA, and others, under which DBA became a fully-owned subsidiary of Radiant, and Radiant became the successor in interest to EBCP's rights under the 2008 Agreement. (Compl. ¶ 9; Docket No. 79, [Declaration of Richard D. Bickelman ("Bickelman Decl.")], Ex. A. [Merger Agreement].) More specifically, the transaction occurred as follows: (1) DBA Acquisition Corp., a Delaware corporation and wholly owned subsidiary of Radiant, merged with and into DBA. (Merger Agreement ¶ 1.1(a).) (2) DBA Acquisition Corp ceased as a separate corporate entity and "DBA

---

[1] It is unclear from the complaint whether Plaintiff intended to write July 1, 2003 or July 1, 2008 as the date of the purchase agreement. Paragraphs 5 and 6 appear to be internally inconsistent. The date of this sale is not particularly relevant for this order, but for purposes of continuity, the Court will use 2008.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

. . . continue[d] its corporate existence as the surviving corporation under the laws of the State of New Jersey. (Id.) (3) DBA then became a wholly owned subsidiary of Radiant. (Id.)

Regarding DBA's intellectual property in connection with the merger, the Merger Agreement states:

> DBA owns and has the exclusive right to use all intellectual property presently in use by it and necessary for the operation of its Business as now being conducted, which intellectual property includes, but is not limited to, patents, trademarks, trade names, service marks, copyrights, trade secrets, customer lists, inventions, formulas, methods, processes and other proprietary information.

(Merger Agreement ¶ 3.2(o).)

The only agreements as to confidentiality that Counterdefendant Pollara signed appears to be the Distribution By Air Employee Manual in 2003 and 2007. (Docket No. 42.2, [Declaration of Bohn H. Crain ("Crain Decl.")] Exs. B, D.) Both manuals presumably have the same pertinent paragraph (though Ex. D only includes the signature page of the manual):

> As an employee, you have an obligation not to disclose or use any Distribution by Air confidential information, even after you leave our employ. Additionally, our customers and suppliers entrust Distribution by Air with important information relating to their businesses. The nature of this relationship requires maintenance of confidentiality. . . .
>
> No one is permitted to remove or make copies of any Distribution by Air records, reports, or documents without prior management approval. Disclosure of confidential information could lead to termination, as well as other possible legal action.

(Id.)

**B. THE PRESENT LAWSUIT**

Santini resigned from her position as Radiant's Production Manager on December 12, 2011. (MPI at 9.) Compl. ¶ 10, Ex. B.) Santini denies that she is bound by the 2008 Non-Competition Agreement Paul Pollara signed in conjunction with his sale of DBA shares to EBCP and filed this suit in Los Angeles County Superior Court on December 15, 2011, seeking a declaration that the agreement is void and unenforceable as to her. (Compl. ¶¶ 11–13.) Radiant timely removed the suit to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a).

LINK: 42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

(Docket No. 1, Not. of Removal at 3–5.)

      On August 29, 2012, Radiant filed a FACC pressing claims for common-law misappropriation of trade secrets, unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., breach of the duty of loyalty under Cal. Lab. Code section 2860, and statutory misappropriation of trade secrets under Cal. Civ. Code § 3426. (FACC.) Radiant alleges that, after Plaintiff resigned on December 12, 2011, she improperly solicited Radiant's employees to join her new companies and improperly sent an e-mail to 165 of Radiant's customers, soliciting their business. (Id. ¶¶ 11–18.)

### III.
### DISCUSSION

**A. PRELIMINARY INJUNCTION STANDARD**

      A plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. at 24.

      The Ninth Circuit applies the Winter standard using a "sliding scale test for preliminary injunctions," which "remains viable after the Supreme Court's decision in Winter." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. at 1131. The version of the sliding scale approach adopted and applied in the Ninth Circuit has been called the "'serious questions' test." Id. Under this test, a preliminary injunction may issue "where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" Id. (internal quotation marks and citation omitted). This approach is applied as part of the four-element Winter test; the plaintiff must also satisfy the remaining two Winter factors. Id. at 1135.

**B. RADIANT'S CLAIMS**

      Radiant seeks a preliminary injunction under the following causes of action: common law misappropriation of trade secrets, unfair competition under Cal. Bus. & Prof. Code §§ 17200 et

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

seq., and misappropriation of trade secrets under Cal. Civ. Code § 3426 (CUTSA). Radiant either dropped its common law misappropriation claim or considered it merged with its CUTSA claim. (Reply Supplemental 1 at 2.)

As Radiant argues in its MPI, "[a] court may enjoin tortious conduct, violative of the California Uniform Trade Secrets Act . . . or the California Unfair Competition Law . . . by banning former employees, such as Santini and Reffner, and competing companies like Oceanair from using trade secret information" to identify or solicit customers. (MPI at 14.) Radiant's FACC also indicates that the crux of Radiant's request for preliminary injunction is the misappropriation of trade secrets. (FACC ¶¶ 30-41.) Without the misappropriation of trade secrets, Radiant's unfair competition claim, as pleaded, cannot stand on its own because it arises out of "the same nucleus of facts as trade secret misappropriation," and as such is preempted by CUTSA. K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc., 90 Cal. Rptr. 3d 247, 264 (Cal. App. 6th Dist. 2009).

Radiant's FACC indicates that, to some extent, the unfair competition claim is tied to Santini's alleged solicitation of Radiant's employees. (FACC ¶ 31.) To the extent Radiant is seeking an injunction based on the solicitation of Radiant's employees, "[m]ere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1337 (9th Cir. 1980). However, if there is some "'concomitant, unconscionable conduct'," for instance if "there is a 'misappropriation of trade secrets as a concomitant of the solicitation'," relief is available. Id. (quoting Diodes, Inc. v. Franzen, 67 Cal. Rptr. 19, 26 (Cal. App. 2d Dist. 1968)). Radiant's unfair competition claim, as pleaded, is based predominantly on the same nucleus of facts as trade secret misappropriation. Radiant makes reference to breach of loyalty in the MPI, but the breach of loyalty cause of action in the FACC is also clearly based on the same nucleus of facts as the misappropriation claim. (FACC ¶¶ 26-28.)

Therefore, whether Radiant is entitled to the preliminary injunction it seeks depends upon Radiant's claim for misappropriation of trade secrets.

**C. STANDING**

Counterdefendants contend that "Radiant lacks standing to advance this motion" because the trade secrets at issue are not owned by Radiant. (Supplemental Opposition 1 at 1.) The Court must address this, as "[i]n every federal case, the court must make a threshold determination of standing." Oster v. Lightbourne, 2012 U.S. Dist. LEXIS 28126 at 24 (N.D. Cal. Mar. 2, 2012). See Warth v. Seldin, 422 U.S. 490, 498 (1975) ("In essence the question of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). It is "clear that it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." United States v. Hays, 515 U.S. 737, 743 (1995) (internal citations omitted).

### 1. LEGAL AUTHORITY

As a preliminary matter, "[a] corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary . . . ." Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003). The Ninth Circuit has "dismissed a parent corporation's action because the parent alleged injury flowing from violations of its subsidiary's rights, not its own." General Motors Corp. v. California State Bd. of Equalization, 815 F.2d 1305, 1308 (9th Cir. 1987) (citing EMI Ltd. v. Bennett, 738 F.2d 994 (9th Cir. 1984); see also DeMott, Shareholder Derivative Actions: Law and Practice § 2.2 (2006) ("[A]s a general proposition, injury done to a subsidiary does not create a claim that may be asserted in a direct action by the subsidiary's parent corporation because the claim is the property of the subsidiary, not the parent.").

California case law gives no clear guidance on the issue of corporate parent standing in the trade secret context. Thus, one district court in this Circuit noted:

> In the context of the California UTSA, it is clear that ownership of the trade secret is sufficient to establish standing. . . . However, California courts have not yet addressed whether ownership of the trade secret is necessary to establish standing. . . . Only the Fourth Circuit has directly addressed the issue. DTM Research, L.L.C. v. AT & T Corp., 245 F.3d 327, 330-33 (4th Cir. 2001) (concluding that the traditional trade secret ownership requirement for standing is not imported into the Maryland UTSA).

Memry Corp. v. Ky. Oil Tech., N.V., 2006 U.S. Dist. LEXIS 94393 at 25, n. 17 (N.D. Cal. Dec. 18, 2006). However, that case involved a licensee of the allegedly misappropriated technology, and the Court analogized to patent cases holding that licensees have standing to enforce patent rights. Id. at 25.

But not every court has followed that path. In another Northern District case, the trial court "held that even if the companies are closely operated and the parent purports to act on behalf of the subsidiary, a parent does not have standing in a suit involving patents held by a subsidiary without a showing that boundaries between the corporations have been breached."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

Top Victory Elecs v. Hitachi, Ltd., 2010 U.S. Dist. LEXIS 125003 at 12 (N.D. Cal. Nov. 15, 2010) (citing Quantum Corp. v. Riverbed Tech., Inc., 2008 U.S. Dist. LEXIS 11348 at 1-3 (N.D. Cal. Feb. 4, 2008)).  This appears to be following the weight of authority holding "[t]hat a corporate parent's subsidiary owns a patent is not enough to establish that the parent has rights in the subsidiary's patents."  Id. at 11.[2]

### 2. APPLICATION

Counter-Defendants pointed out in Opp. Supplemental 1 that "the true 'owner of the customer list(s) (that Radiant claims constitutes a trade secret) is DBA, *not Radiant*," and accordingly "Radiant is not the real party in interest . . . ."  (Opp. Supplemental 1 at 4.)  In Opp. Supplemental 2, Counter-Defendants expanded on this argument, noting that when Radiant and DBA merged, "DBA owned certain intellectual property including 'trade secrets, customer lists . . . methods, processes and other proprietary information," and as of today "still own[s] and ha[s] not conveyed any interest in its customer lists."  (Opp. Supplemental 2 at 1.)  The totality of Radiant's response consists of the following arguments from Reply Supplemental 2: (1) "it was Plaintiff Bretta Santini who first sued Radiant for declaratory relief, acknowledging that . . . Radiant was a proper party;" and (2) "Radiant is a successor to DBA's trade secrets, having paid over $12 million for the business . . . and is an aggrieved party with standing to have filed the counterclaim."  (Reply Supplemental 2 at 1.)

For multiple reasons, Radiant's response to Pollara's standing arguments misses the mark.  First, Santini's suit acknowledged only that she thought Radiant was the proper party to sue for declaratory judgment, a suit that implicated a non-compete agreement, not trade secrets.  Second, according to the merger agreement, DBA is a separate corporate subsidiary, which according to the analysis above supports a conclusion that Radiant does not have standing to sue for misappropriation.  Radiant has not offered any other evidence or argument to support a claim that it purchased DBA's trade secrets from DBA, that it is the exclusive licensee of DBA's trade secrets, that it has breached corporate boundaries between itself and DBA, or that counterdefendants took trade secrets that belonged to Radiant apart from the DBA merger.

---

[2] In personam jurisdiction jurisprudence provides another analogous line of authority.  In that context, case law teaches that "[t]he existence of a parent-subsidiary relationship is insufficient to establish personal jurisdiction over" one because of the other.  Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985); see Uston v. Hilton Casinos, Inc., 564 F.2d 1218, 1219 (9th Cir. Cal. 1977) ("The fact that . . . parent corporation does business in California cannot in itself render the subsidiary amenable to service of process and subject to in personam jurisdiction there.")

LINK: 42

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-0344 GAF (SPx) | Date | September 13, 2012 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics Inc et al | | |

Indeed, it is unclear what information exactly counterdefendants allegedly misappropriated. Moreover, the only confidentiality agreements Santini appears to have signed were part of the DBA employee manual, which also was not specific as to the information regarded as trade secret.

It is Radiant's burden to demonstrate it has standing to bring a claim relating to the trade secret information it accuses counterdefendants of misappropriating. Radiant has not met that burden.

### D. PRELIMINARY INJUNCTION APPLICATION

In order to obtain a preliminary injunction, Radiant must first establish a likelihood of success on the merits. However, because standing to bring a claim for misappropriation of trade secrets is a necessary predicate to demonstrate a likelihood of success on the merits, Radiant cannot presently make a showing of any degree of likelihood. Here, the likelihood of success cannot be "such that 'serious questions going to the merits were raised'" because the merits of the claim cannot be reached. Alliance for Wild Rockies, 632 F.3d 1127, 1134 (9th Cir. 2011) (internal quotation marks and citation omitted). Accordingly, Radiant's motion for preliminary injunction must be denied.

## IV.
## CONCLUSION

Based on the foregoing discussion, the Court **DENIES** Radiant's motion for preliminary injunction. The hearing presently scheduled for September 17, 2012, is hereby **VACATED**.

**IT IS SO ORDERED.**