LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-344 GAF (JEMx) | Date | April 15, 2014 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics, Inc. Radiant Logistics, et al. v. Bretta Pollara, et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**          **(In Chambers)**

## ORDER RE: JURY INSTRUCTIONS

The Court has prepared a draft set of jury instructions which accompany this order. This draft set contains a number of general instructions that may or may not be applicable depending on the evidence presented at trial. These general instructions will be modified as necessary at the close of the evidence.

While the Court will conduct a short instruction conference at an appropriate point during the trial, the Court views the draft as very near to the instructions it will give in this case. Because of the failure of the parties to come to a reasonable resolution of their disputes regarding these instructions, the Court has been forced to spend a disproportionate amount of its time reviewing the parties' unnecessarily voluminous submissions. The parties can safely assume that the Court has read their submissions on these instructions and that, to the extent that the instructions do not include a party's request, it has been considered and rejected by the Court. Accordingly, the Court does not anticipate further extended discussion regarding the content of the instructions. It should be sufficient to say that, to the extent possible, the instructions should succinctly state the legal principles that govern the claims and defenses presented at trial and nothing more. The Court had that objective in mind when it reviewed and revised the proposed instructions.

With respect to the preparation of the Court's draft instructions, the following items are noted:

(1) The Court will not refer to Bretta Pollara as "Santini" when she is identified in the caption as Bretta Pollara or Bretta Santini Pollara.

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-344 GAF (JEMx) | Date | April 15, 2014 |
|----------|----------------------|------|----------------|
| Title | Bretta Pollara v. Radiant Logistics, Inc.<br>Radiant Logistics, et al. v. Bretta Pollara, et al. | | |

(2) The Court will not include instructions regarding what Oceanair describes as an employee's mobility rights because it is not an issue in this case.

(3) The Court will not include reference to trial exhibits, other evidence, or thinly veiled arguments in its instructions.  Thus, DBA's proposed instruction based on CACI 4400 has been modified to more closely follow the model instruction.  Likewise, Oceanair's proposal to include argumentative language in CACI 4412 has been rejected.  It is for counsel to connect up the instructions to the evidence in the case through their presentation of evidence and closing arguments.

(4) The question of the identification of trade secrets with specificity is not one to be submitted to the jury and language to that effect will not be included in the jury instructions.

(5) The assertion that "DBA was also the beneficiary of the relationship it had with its customers" is meaningless in the present context and won't be included in CACI 4400.

(6) The Court will not separately state the identical instruction for Oceanair and Pollara. The Court gives a general instruction that tells the jury that the claims as to each defendant should be separately considered.  See Instruction No. 12.  Moreover, the verdict form will direct the jury to separately consider the claims as to each defendant.

(7) The agency and ratification instructions are dealt with together in the Court's general instructions.  See Instruction No. 11.  The Court notes that the objections to this instruction amount to a disguised motion for summary judgment, which the Court will not address at this stage of the proceedings.  The earliest opportunity to address this question will be at the close of the Radiant/DBA case-in-chief.

(8) DBA did not include CACI 4408 defining "improper means" in its instruction packet. However, the Court considers this essential to the jury's consideration of the trade secret claim and has included it as part of Instruction No. 19.

(9) Oceanair's extensive additions and modifications to the unjust enrichment instructions will not be included.  Again, the proposed modifications are argumentative and repetitious.

LINKS:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-344 GAF (JEMx) | Date | April 15, 2014 |
|---|---|---|---|
| Title | Bretta Pollara v. Radiant Logistics, Inc. Radiant Logistics, et al. v. Bretta Pollara, et al. | | |

(10) The Court will bifurcate the punitive damages issue and therefore will not address the punitive damages instructions at this time.

(11) The interference with contract instructions need not include a detailed discussion of the contract that was the subject of the alleged interference, and the effort to do so has resulted in instructions that border on the incomprehensible.

(12) The induced breach of contract elements are stated in the language of the model instruction and encompass the causation issue raised by Oceanair and Pollara through their citation to <u>Hahn v. Diaz-Barba</u>, 194 Cal.App.4th 1177, 1196 (App. Ct. 2011). Element (4) of Instruction No. 25 states in plain language that "Oceanair's conduct caused Paul Pollara to breach his contract."

**IT IS SO ORDERED.**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRETTA POLLARA, ) | |
| Plaintiff, ) | **Case No. CV 12-344-GAF (JEMx)** |
| v. ) | |
| RADIANT LOGISTICS, INC., ) | **JURY INSTRUCTIONS** |
| Defendant. ) | |
| _____ ) | |
| RADIANT LOGISTICS, INC.; DBA ) DISTRIBUTION SERVICES, INC.; ) | |
| Counter-Claimants, ) | |
| v. ) | |
| BRETTA POLLARA; OCEANAIR, ) INC. ) | |
| Counter-Defendants. ) | |
| _____ ) | |

The following sets forth the Court's Jury Instructions.

Dated:

# DRAFT

_____
Gary Allen Feess
United States District Judge

1

**COURT'S INSTRUCTION NO.  1**

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

**COURT'S INSTRUCTION NO.  2**

Although this lawsuit was initiated by Bretta Santini Pollara, the claims that are before you are brought by Radiant Logistics, Inc. and DBA Distribution Services, Inc., against Bretta Santini Pollara, Santini Productions, Inc. and Oceanair, Inc.  On the claims presented, which are described elsewhere in these instructions, Radiant Logistics, Inc. and DBA Distribution Services, Inc. bear the burden of proof.  Throughout these instructions, the parties will be referred to as follows:

Radiant Logistics, Inc. will be referenced as Radiant;

DBA Distribution Services, Inc. will be referenced as DBA;

Bretta Santini Pollara will be referenced as Pollara;

Santini Productions will be referenced as Santini Productions;

Oceanair, Inc. will be referenced as "Oceanair."

**COURT'S INSTRUCTION NO.  3**

I will now give you some instructions regarding your consideration of the evidence in this case.  First, what is the evidence?

The evidence from which you are to decide what the facts are consists of:

1.   the sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness; and

2.   the exhibits which have been received into evidence; and

3.   any facts to which the parties have stipulated or agreed.

# COURT'S INSTRUCTION NO.  4

In reaching your verdict, you may consider only those items that have been received into evidence and nothing else.  Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits may have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**COURT'S INSTRUCTION NO.  5**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# COURT'S INSTRUCTION NO.  6

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the quality of the witness' memory;

3.    the witness' demeanor and manner while testifying;

4.    the witness' interest in the outcome of the case and any bias or prejudice;

5.    whether other evidence contradicted the witness' testimony;

6.    the reasonableness of the witness' testimony in light of all the evidence; and

7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

**COURT'S INSTRUCTION NO.   7**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  Evidence has been presented by way of deposition testimony.  You should treat that testimony just as if it had been given in Court.

In some instances, the parties have presented evidence that certain witnesses gave trial testimony that was allegedly inconsistent with testimony they gave in deposition.  It is up to you to decide whether the witness in fact testified inconsistently with testimony given during a deposition and, if so, whether and to what extent that inconsistency bears on the witness's credibility.

**COURT'S INSTRUCTION NO.  8**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, the facts on which the expert relied, and all the other evidence in the case.

**COURT'S INSTRUCTION NO.  9 **

     When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

     You should base your decision on all of the evidence, regardless of which party presented it.

**COURT'S INSTRUCTION NO.   10**

All persons are equal before the law and a corporation or business entity is entitled to the same fair and conscientious consideration by you as any other person.

# COURT'S INSTRUCTION NO.   11

Under the law, a corporation or business can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

In this case, DBA claims that Pollara was Oceanair's agent and that Oceanair is therefore responsible for Pollara's conduct.

An agent is a person who acts on behalf of another under an express or implied agreement, and who is subject to the other's control or right to control the manner and means of performing the services.  The other person is called a principal.

If DBA proves that Oceanair gave Pollara authority to act on its behalf, then Pollara was Oceanair's agent.  This authority may be shown by words or may be implied by the parties' conduct.  This authority cannot be shown by the words of Pollara alone.

In addition, DBA claims that Oceanair is responsible for the harm caused by Pollara's conduct because it approved that conduct after it occurred.  If you find that Santini harmed DBA, you must decide whether Oceanair approved that conduct.  To establish its claim, DBA must prove all of the following:

1.  That Pollara intended to act on behalf of Oceanair;

2.  That Oceanair learned of Pollara's conduct after it occurred;  and

3.  That Oceanair approved Pollara's conduct.

Approval can be shown through words, or it can be inferred from a person's conduct.  Approval  can be inferred if a person voluntarily keeps the  benefits of its representative's  unauthorized conduct after it learns of the unauthorized conduct.

## COURT'S INSTRUCTION NO.  12

You have been presented with three separate claims brought against three different defendants.  These are the following:

DBA brings a claim for misappropriation of trade secrets against Pollara, Santini Productions, and Oceanair.

Both Radiant and DBA bring claims against Oceanair for interference with contractual relations and inducement to breach contract.

You should decide the case as to each claim and each party separately. Unless otherwise stated, the instructions apply to all parties.

13

**COURT'S INSTRUCTION NO.   13**

DBA claims that it is the owner of a compilation of data consisting of customer information that includes the identity of those customers and relevant contact information such as telephone numbers and email addresses.

DBA claims that this customer information was a trade secret and that Pollara, Santini Productions and Oceanair misappropriated the trade secret. "Misappropriation" means the improper acquisition, use or disclosure of the trade secret.

DBA contends that the misappropriation of its trade secret caused Pollara, Santini Productions, and Oceanair to be unjustly enriched.

Pollara, Santini Productions, and Oceanair deny that DBA's customer information is a trade secret, that they misappropriated the information, and that they were unjustly enriched.   They further contend that the information alleged to be a trade secret was readily ascertainable by proper means at the time of the alleged acquisition and use, and that DBA failed to make reasonable efforts to avoid the unjust enrichment damages that it seeks in this case.

# COURT'S INSTRUCTION NO.   14

To succeed on its claim of misappropriation of trade secret, DBA must prove all of the following by a preponderance of the evidence:

1.  That DBA owned a trade secret in a compilation of customer data;
2.  That this data constituted a trade secret at the time that it was misappropriated;
3.  That Defendant Pollara, Santini Productions, or Oceanair improperly acquired and used the trade secret;
4.  That Defendant Pollara, Santini Productions, or Oceanair was unjustly enriched; and
5.  That Defendant's acquisition and use of the trade secret was a substantial factor in causing Defendants to be unjustly enriched.

A substantial factor in causing harm is a facotr that a reasonable perons would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

Conduct is not a substantial factor in cuasing harm if the same harm would have occurred without that conduct.

15

**COURT'S INSTRUCTION NO.  15**


To prove that the customer data was a trade secret, DBA must prove all of the following by a preponderance of the evidence:

1.  That the customer information was secret;

2.  That the customer information had actual or potential independent economic value because it was secret; and

3.  That DBA made reasonable efforts to keep the customer information secret.

# COURT'S INSTRUCTION NO.   16

Customer information has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the customer information and who could obtain economic value from its disclosure or use.

In determining whether such information had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which DBA obtained or could obtain economic value from the data by keeping it secret;

2. The extent to which others could obtain economic value from the data if that data were not secret;

3. The amount of time, money, or labor that DBA expended in developing the data;

4. The amount of time, money, or labor that was saved by a competitor who used the data.

The presence or absence of any one of these factors is not necessarily determinative.

1

**COURT'S INSTRUCTION NO.   17**

2

3          The secrecy required to prove that something is a trade secret does not

4     have to be absolute in the sense that no one else in the world possesses the

5     information.  It may be disclosed to employees involved in DBA's use of the

6     trade secret as long as they are instructed to keep the information secret.  It may

7     also be disclosed to non-employees if they are obligated to keep the information

8     secret.  However, it must not have been generally known to the public or to

9     people who could obtain value from knowing it.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S INSTRUCTION NO.  18

To establish that its customer information is a trade secret, DBA must prove by a preponderance of the evidence that it made reasonable efforts under the circumstances to keep it secret.  "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as DBA, exercising due care to protect important information of the same kind.  This requirement applies separately to each item DBA contends to be a trade secret.

In determining whether or not DBA made reasonable efforts to keep its customer data secret, you should consider all of the facts and circumstances.  Among the factors you may consider are the following:

1.  Whether documents or computer files containing the customer information were marked with confidentiality warnings;

2.  Whether DBA instructed its employees to treat the customer information as confidential;

3.  Whether DBA restricted access to the customer information to the persons who had a business reason to know the customer information;

4. Whether DBA kept the customer information in a restricted or secured area;

5.  Whether DBA required employees or others with access to the customer information to sign confidentiality or nondisclosure agreements;

6.  Whether DBA took any action to protect the specific customer information, or whether they relied on general measures to protect its business information or assets;

7.  The extent to which any general measures taken by DBA would prevent the unauthorized disclosure of' the customer information; and

8. Whether there were other reasonable measures available to DBA that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

# COURT'S INSTRUCTION NO.  19

Pollara misappropriated DBA's trade secrets if she used improper means
to acquire them.  Oceanair misappropriated DBA 's trade secrets by acquisition
if it acquired the trade secrets from Pollara and knew or had reason to know that
Pollara used improper means to acquire them.

Improper means of acquiring a trade secret or knowledge of a trade secret
include, but are not limited to, theft, misrepresentation, breach or inducing
breach of a duty to maintain secrecy.  However, it is not improper to acquire a
trade secret or knowledge of the trade secret by any of the following:

1.  Independent efforts to discover the information; or

2.  Observing the information in public use or on public display; or

3.  Obtaining the information from published literature, such as trade
journals, references books, the Internet, or other publicly available
sources.

# COURT'S INSTRUCTION NO. __20__

A party misappropriated DBA's trade secret by use if it:

1.  Used the customer information without DBA 's consent; and

2.  Did any of the following:

    a.  acquired knowledge of the trade secrets by improper means; or

    b.  at the time of use, knew or had reason to know that their knowledge of DBA 's trade secrets came from or through Pollara or Santini Productions, who had previously acquired the trade secrets by improper means; or

    c.  at the time of use, knew or had reason to know that their knowledge of DBA 's trade secret was acquired under circumstances creating a legal obligation to limit use of the customer data; or

    d. at the time of use, knew or had reason to know that their knowledge of  DBA 's trade secret came from or through Pollara or Santini Productions and that Pollara or Santini Productions had a duty to DBA to limit use of the customer data.

# COURT'S INSTRUCTION NO.   21

As an affirmative defense, Pollara, Santini Productions and Oceanair contend that DBA's customer information was readily ascertainable by proper means.

With respect to this defense, Defendants cannot be found liable for misappropriating DBA's trade secret if they prove that the customer data was readily ascertainable by proper means at the time of the alleged acquisition, use or disclosure.  On this issue Defendants bear the burden of proof by a preponderance of the evidence.

There is no fixed standard for determining what is "readily ascertainable by proper means."  In general, information is readily ascertainable if it can be obtained, discovered, developed or compiled without significant difficulty, effort, or expense.  For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

## COURT'S INSTRUCTION NO.  22

      If DBA proves that a defendant misappropriated its trade secrets, then DBA is entitled to recover damages if the misappropriation caused such Defendant to be unjustly enriched.

      A defendant is unjustly enriched if its misappropriation of DBA 's trade secrets caused it to receive a benefit that it otherwise would not have achieved. To decide the amount of any unjust enrichment, first determine the value of the defendant's benefit which would not have been achieved except for their misappropriation. Then subtract from that amount the defendant's reasonable expenses.

# COURT'S INSTRUCTION NO.  23

If Oceanair misappropriated DBA' s trade secret and the misappropriation caused harm, DBA is not entitled to recover damages for harm that Oceanair proves DBA could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of DBA's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship. If DBA made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

# COURT'S INSTRUCTION NO. __24__

Radiant and DBA claim that Oceanair intentionally interfered with the contract between Radiant and DBA, on the one hand, and Paul Pollara, on the other. To establish this claim, Radiant and DBA must prove all of the following by a preponderance of the evidence:

1.  That there was a contract between Radiant or DBA on the one hand, and Paul Pollara on the other hand;

2.  That Oceanair knew of the contract;

3.  That Oceanair intended to disrupt the performance of this contract;

4.  That Oceanair's conduct prevented performance or made performance more expensive or difficult;

5.  That Radiant or DBA was harmed; and

6.  That Oceanair's conduct was a substantial factor in causing such harm.

# COURT'S INSTRUCTION NO.  25

Radiant and DBA claim that Oceanair intentionally caused Paul Pollara to breach his contract with Radiant and DBA. To establish this claim, Radiant and DBA must prove all of the following:

1. That there was a contract between Radiant and/or DBA on the one hand, and Paul Pollara on the other hand;

2. That Oceanair knew of the contract;

3. That Oceanair intended to cause Paul Pollara to breach the contract;

4. That Oceanair's conduct caused Paul Pollara to breach the contract;

5. That Radiant and DBA were  harmed; and

6. That Oceanair's conduct was a substantial factor in causing harm to Radiant or DBA.

**COURT'S INSTRUCTION NO.  26**


      A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. lt must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

**COURT'S INSTRUCTION NO.   27**

To establish breach of contract for purposes of an inducement to breach of contract claim, the party seeking relief must prove the following:

    1.  That it entered into a contract with Paul Pollara;

    2.  That it did all, or substantially all, of the significant things that the contract required it to do;

    3.  That all of the conditions required by the contract for Paul Pollara's performance had occurred;

    4.  That Paul Pollara failed to do something that the contract required him to do or did something that the contract prohibited him from doing; and

    5.  That party seeking relief was harmed by Paul Pollara's failure.

# COURT'S INSTRUCTION NO.  28

If you decide that Radiant or DBA has proved its claims against Oceanair for interference with contract or inducement to breach contract, you also must decide how much money will reasonably compensate it for the harm. This compensation is called "damages."

The amount  of damages must include an award for each item of harm that was caused by Oceanair's wrongful conduct, even if the particular harm could not have been anticipated.

Neither Radiant nor DBA have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

*[Specific Items of damage??]*

**COURT'S INSTRUCTION NO.  29**

To recover damages for lost profits, Radiant and DBA must prove it is reasonably certain they would have earned profits but for Oceanair's conduct.

To decide the amount of damages for lost profits, you must decide the amount of profit Radiant and DBA would have received but for Oceanair's conduct.

The amount of lost profits need not be calculated with mathematical precision but there must be a reasonable basis for computing the loss.

**COURT'S INSTRUCTION NO.   30**

If you find that Radiant has already been fully compensated for the same injury for which it is seeking compensation in connection with this trial, it is not entitled to additional damages in connection with its claims here.

# COURT'S INSTRUCTION NO.  31

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully and with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**COURT'S INSTRUCTION NO.  32**


The attitude and conduct of jurors at the beginning of their deliberations are very important.  It is rarely helpful for a juror, on entering the jury room, to express an emphatic opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, a sense of pride may be aroused, and one may hesitate to change a position even if shown that it is wrong.  Remember that you are not partisans or advocates in this matter.  You must be impartial judges of the facts.

**COURT'S INSTRUCTION NO.  33**


You may use notes taken during trial to assist your memory. Notes, however, should not be substituted for your memory, and you should not be overly influenced by the notes.

## COURT'S INSTRUCTION NO. __34__

You must not determine any issue in this case by chance such as the flip of a coin, the drawing of lots or by any other chance determination.  For example, if you determine that a party is entitled to recover, you must not arrive at the amount of damages to be awarded by agreeing in advance to determine an average and to make that your verdict, without further exercise of your independent consideration, judgment and decision.

# COURT'S INSTRUCTION NO.  35

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**COURT'S INSTRUCTION NO.  36**

After you have reached unanimous agreement on a verdict, your foreperson will fill in, date, and sign the verdict form or forms and advise the court that you have reached a verdict.